**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **LEROY EDMONDS,** | * | |
| **Plaintiff,** | * | |
| **v.** | * | |
| **LIDL US, LLC,** | * | |
| **Defendant/Third-Party Plaintiff,** | * | **Civil Action No. EA-24-2768** |
| **v.** | * | |
| **NFI INDUSTRIES, INC. and NFI INTERACTIVE LOGISTICS, LLC,** | * | |
| | * | |
| **Third-Party Defendants.** | * | |

## MEMORANDUM OPINION

On July 24, 2024, Plaintiff Leroy Edmonds filed the above-captioned action, in the Circuit Court for Cecil County, Maryland, against Defendant Lidl US, LLC (Lidl), alleging a single count of premises liability negligence. ECF No. 2. Lidl removed the case to this Court on September 26, 2024, on the basis of diversity jurisdiction.[1] ECF No. 1 ¶ 5. With Mr. Edmonds' consent and leave of Court, Lidl filed a Third-Party Complaint against NFI Industries, Inc. and NFI Interactive Logistics, LLC (collectively, NFI). ECF Nos. 34, 36, 39–41; Fed. R. Civ. P. 14(a). Pending before the Court is NFI's motion to dismiss the Third-Party Complaint, which is fully briefed. ECF Nos. 46, 53, 55. No hearing is necessary. Local Rule 105.6 (D. Md. Dec 1, 2025). For the reasons set forth below, the motion is granted in part and denied in part.

[1] This case was referred to a United States Magistrate Judge with the parties' consent and assigned to the undersigned on December 6, 2024. ECF Nos. 12, 15, 54; 28 U.S.C. § 636; Local Rule 301.4 (D. Md. Dec. 1, 2025).

## I. BACKGROUND[2]

On or about November 5, 2021, Mr. Edmonds slipped and fell on a large shipping bag that was on the floor of the shipping/loading dock at Lidl's distribution center in Perryville, Maryland, and incurred damages as a result. ECF No. 2 ¶¶ 4, 5, 8. Mr. Edmonds alleges a single count of negligence against Lidl. *Id.* at ¶¶ 10–13. At the time of the incident, Mr. Edmonds was employed by NFI. ECF Nos. 2 ¶ 5; 41 ¶ 2.

In its Third-Party Complaint, Lidl pleads two counts against NFI: (1) breach of contract and (2) contribution/indemnification. ECF No. 41 ¶¶ 8–11. Count I is premised on the Framework Agreement for Freight Services (the Contract), which Lidl and NFI entered into in 2016. ECF Nos. 34-4 ¶ 12; 41 ¶ 3; 46-3 ¶ 12.[3] Lidl alleges that NFI breached the Contract by "failing to defend, indemnify and hold harmless Lidl," and that Lidl has incurred damages as a result. ECF No. 41 at ¶¶ 5–6. Lidl further contends that if Mr. Edmonds were to obtain a judgment against Lidl, Lidl is entitled to judgment against NFI "by way of indemnification and/or contribution." *Id.* at ¶ 11. Paragraph 12 of the Contract, entitled "Liability and Indemnification," provides, in pertinent part, that:

---

[2] This factual summary is drawn from the relevant allegations in the Complaint and Third-Party Complaint (ECF Nos. 2, 41), which are accepted as true for the purposes of deciding this motion, as well as documents that are integral to the Third-Party Complaint and authentic. *Goines* v. *Valley Cmty. Servs. Bd.*, 822 F.3d 159, 164165 (4th Cir. 2016); *E.I. du Pont de Nemours & Co.* v. *Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011).

[3] Lidl US, LLC (Lidl) referenced the Framework Agreement for Freight Services (the Contract) in its proposed Third-Party Complaint and filed an excerpt of the Contract as an exhibit in support of its motion for leave to file the proposed pleading. ECF Nos. 34-4; 39 ¶ 3. NFI Industries, Inc. and NFI Interactive Logistics, LLC (collectively, NFI) also filed an excerpt of the Contract as an exhibit to its motion to dismiss. ECF No. 46-3. Neither party disputes the authenticity of the Contract, which is integral to the Third-Party Complaint and may properly be considered when deciding the instant motion. ECF Nos. 46, 53, 55; *Goines,* 822 F.3d at 166 ("[W]e may consider a document submitted by the movant that was not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity.").

> 2. [NFI] will promptly indemnify and hold Lidl harmless, and will defend Lidl against any and all loss, liability, damage, claims, demands, or suits (whenever asserted) and related costs and expenses, including attorneys' fees and investigation fees, that are based on, arise out of or are related to, directly or indirectly, the continuing or terminated employment relationship of any employees who are appointed to perform services due under this Agreement or the rendering of services for Lidl by such personnel . . . .
>
> * * *
>
> 4. Lidl shall defend, indemnify, and hold [NFI] and its employees and agents harmless from and against all claims, liabilities, losses , damages, fines, penalties payments, costs, and expenses (including, without limitation, reasonable legal fees) caused by and resulting from (a) the negligence or intentional misconduct of Lidl, its employees, suppliers, contractors or agents, or (b) Lidl's or its employees', suppliers', contractors' or agents' violation of applicable laws and regulations.

ECF Nos. 34-4 ¶ 12.2; 46-3 ¶¶ 12.2, 12.4.

## II. DISCUSSION

In support of dismissal, NFI argues that the Third-Party Complaint fails to state a claim upon which relief may be granted because (1) the indemnity clause does not clearly and explicitly provide that NFI will indemnify Lidl for Lidl's allegedly tortious conduct; (2) the indemnity clause does not waive NFI's immunity under the Maryland Workers Compensation Act (MWCA), Md. Code Ann., Lab. & Empl. § 9-101, *et seq*.; and (3) Lidl has no right of recovery against NFI for indemnity or contribution. ECF No. 46 ¶¶ 5–7. Lidl argues the opposite. ECF No. 53 at 1–4.[4] Following a discussion of the applicable standard of review, each argument is addressed in turn below.

---

[4] Page numbers refer to the pagination of the Court's Case Management/Electronic Case Files (CM/ECF) system printed at the top of the cited document.

**A. Standard of Review**

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a complaint on the grounds that it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The "purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint." *Edwards* v. *City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). Rule 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." This pleading standard is designed to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and citation omitted). A complaint does not need "detailed factual allegations" to satisfy the Rule 8(a)(2) pleading standard, but it must have "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id*. Bald allegations alone will not suffice, nor will an "unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678, 681 (2009).

When evaluating a Rule 12(b)(6) motion, a court must accept all factual allegations in the complaint as true and draw reasonable inferences from the facts in favor of the plaintiff to determine if the plaintiff is entitled to the relief sought. *Id.* at 678; *E.I. du Pont de Nemours and Co.* v. *Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011). The same does not hold true for legal conclusions. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555-556. Thus, "a plaintiff armed with nothing more than conclusions" has not satisfied the Rule 12(b)(6) standard. *Iqbal*, 556 U.S. at 678-679. Ultimately, a court determines if the pleading standard has been met "by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the complaint states a claim. *A Society Without a Name* v. *Virginia*, 655 F.3d 342, 346 (4th Cir. 2011) (internal quotation marks and citations omitted).

To survive a motion to dismiss, a complaint must have "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The plausibility standard falls somewhere in between "probability," which is not required, and "sheer possibility," which is insufficient. *Id.*; *Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level."). The determination of whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

**B. Contractual Duty to Defend and Indemnify**

In an action brought under a federal court's diversity jurisdiction, the Court is to apply the substantive law of the state in which it sits. *Mathis* v. *Terra Renewal Serv. Inc.*, 69 F.4th 236, 242 (4th Cir. 2023); *Lewis* v. *Waletzky*, 422 Md. 647, 657 (2011). With limited exceptions, Maryland courts have "long recognized the ability of contracting parties to specify in their contract that the laws of a particular State will apply in any dispute over the validity, construction, or enforceability of the contract." *Jackson* v. *Pasadena Receivables, Inc.*, 398 Md. 611, 617 (2007). Here, it is uncontested that Virginia law governs the Contract. ECF Nos. 46-1 at 4–6; 53 at 1–2; *see also* 46-3 ¶ 22.1. Further, none of the exceptions to enforcement of a contract's choice-of-law provision apply. Restatement (Second) of Conflict of Laws § 187 (1971) (Law of the State Chosen by the Parties); *Jackson*, 398 Md. 611 (adopting and applying § 187); *Henry* v. *Gateway, Inc.*, 187 Md. App. 647, 665-668 (2009) (discussing exceptions). The undersigned therefore applies Virginia law to questions of contract formation and interpretation.

"In Virginia, the elements for a breach of contract claim are: (1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of the obligation;

and (3) an injury or harm to the plaintiff caused by the defendant's breach." *Cyberlock Consulting, Inc.* v. *Information Experts, Inc.*, 939 F. Supp. 2d 572, 578 (E.D. Va. 2013), *aff'd*, 549 Fed. Appx. 211 (4th Cir. 2014) (citing *Ulloa* v. *QSP, Inc.,* 271 Va. 72, 79 (2006)). A breach of an indemnification agreement requires evidence of these same essential elements. *See*, *e.g.*, *SunTrust Mortg., Inc.* v. *Unlimited Fin. Servs., LLC*, No. 3:11CV571, 2012 WL 1427849, at *4 (E.D. Va. Apr. 24, 2012). "Under Virginia law, indemnity contracts are construed under the general rules that govern the interpretation of any other type of contract." *Carpenter Insulation & Coatings* v. *Statewide Sheet Metal & Roofing*, Nos. 90-2424, 90-2471, 937 F.2d 602 (Table), 1991 WL 120315, at *3 (4th Cir. July 9, 1991). Virginia law provides that the Court "must construe the contract as it is written," *Palmer & Palmer Co., LLC* v. *Waterfront Marine Constr., Inc.*, 276 Va. 285, 289 (2008), and "as a whole," with all provisions "harmonized, giving effect to each when reasonably possible," *Schuiling* v. *Harris*, 286 Va. 187, 193 (2013). Virginia courts "look at the words in issue within the four corners of the document itself" to determine whether a contract's language is ambiguous. *Eure* v. *Norfolk Shipbldg. & Drydock Corp., Inc.*, 263 Va. 624, 632 (2002). A contract term is ambiguous when it can hold "two or more meanings," "be[ ] understood in more than one way," or "refer to two or more things at the same time." *Aetna Cas. & Sur. Co.* v. *Fireguard Corp.*, 249 Va. 209, 215 (1995). Mere disagreement between the parties as to the meaning of the term does not constitute ambiguity. *TM Delmarva Power, L.L.C.* v. *NCP of Va., L.L.C.*, 263 Va. 116, 119 (2002).

Here, the Contract's indemnification clause provides that NFI "will promptly indemnify and hold Lidl harmless, and will defend Lidl against any and all loss, liability, damage, claims, demands, or suits . . . *that are based on, arise out of or are related to, directly or indirectly, the continuing or terminated employment relationship* of any employees who are appointed to perform services" under the Contract. ECF Nos. 34-4 ¶ 12.2; 46-3 ¶ 12.2 (emphasis added). In

contrast, with respect to Lidl, the Contract's indemnification clause provides that "Lidl shall defend, indemnify, and hold [NFI] and its employees and agents harmless from and against all claims . . . caused by and resulting from . . . the *negligence or intentional misconduct of Lidl*, its employees, suppliers, contractors or agents." ECF No. 46-3 ¶ 12.4 (emphasis added). Thus, NFI's obligations under the indemnification clause derive from an employment relationship, whereas Lidl's obligations stem from negligence or intentional misconduct. Mr. Edmonds, who was an NFI employee at the time of the occurrence, alleges premises liability negligence on the part of Lidl. ECF No. 2. While Mr. Edmonds' claim is not based on his employment relationship with NFI, it arises from and relates to his employment relationship with NFI given that Mr. Edmonds was allegedly injured during the ordinary performance of his duties as an NFI employee providing services to Lidl under the Contract. ECF No. 2 ¶ 5 (alleging that Mr. Edmonds, "during the course and scope of [his] employment[,] . . . was caused to slip and fall on a large shipping bag which was left on the floor of a shipping/loading dock"); *Gina Chin & Assocs., Inc.* v. *First Union Bank*, 260 Va. 533, 541-542 (2000) (discussing "scope of employment" in the context of respondeat superior and noting that "the issue is whether the service itself, in which the tortious act was done, was within the ordinary course of such business") (internal quotation marks and citation omitted).

The undersigned reads paragraph 12.2 of the Contract as encompassing both a duty to defend and a duty to indemnify. ECF Nos. 34-4 ¶ 12.2; 46-3 ¶ 12.2 (providing that NFI "*will promptly indemnify* and hold Lidl harmless, and *will defend* Lidl") (emphasis added); *see also* ECF No. 41 ¶ 5 (alleging that NFI "breached its Contract with Lidl by failing to defend, indemnify and hold harmless Lidl in this lawsuit"); 53 at 4 (arguing that "NFI's obligation is immediate" and "includes an explicit duty to defend"). In the context of insurance coverage, Virginia courts have recognized that "the duty to defend is broader than the duty to indemnify

inasmuch as the duty to defend turns on a complaint's allegations whereas the duty to indemnify requires established or litigated facts." *Capital Env't Servs., Inc.* v. *North River Ins. Co.*, 536 F. Supp. 2d 633, 640 (E.D. Va. 2008); *see also Virginia Elec. & Power Co.* v. *Northbrook Prop. & Cas. Ins. Co.*, 252 Va. 265, 268 (1996) ("the obligation to defend is broader than [the] obligation to pay") (internal quotation marks and citation omitted; alteration in original). NFI has not moved to dismiss the duty-to-defend component of Count I of the Third-Party Complaint. ECF Nos. 46-1 at 4–6; 55 at 2–4. Nevertheless, Virginia courts have held that "a duty to defend does not apply if no conceivable duty to indemnify exists." *Dominion Nuclear Conn., Inc. v. Securitas Sec. Servs. USA, Inc.*, No. 170130, 2018 WL 654719, at *5 n.10 (Va. Feb. 1, 2018) (dissenting opinion); *accord Brenner* v. *Laws. Title Ins. Corp.*, 240 Va. 185, 189 (1990); *Travelers Indem. Co.* v. *Obenshain*, 219 Va. 44, 46 (1978).

NFI argues that it has no duty to indemnify Lidl because the Contract is not "clear and explicit" in requiring indemnification against Lidl's own negligence, something NFI contends Virginia law requires. ECF No. 46-1 at 5 (quoting *Complaint of Christiansen Marine, Inc.*, No. 2:95CV896, 1996 WL 616188, at *10 (E.D. Va. Apr. 11, 1996)). The cases on which NFI relies in support of its "clear and explicit" argument do not enjoy broad support. For example, *Complaint of Christiansen Marine, Inc.*, No. 2:95CV896, 1996 WL 616188, at *10 (E.D. Va. Apr. 11, 1996), an admiralty limitation of liability case, is most frequently cited for the standard of care in federal court decisions evaluating maritime negligence claims. *E.g.*, *Matter of Jackson Creek Marine, LLC*, No. 2:23-CV-115, 2026 WL 939479, at *2 (E.D. Va. Jan. 30, 2026); *McAllister Towing of Va., Inc.* v. *United States*, No. 2:10CV595, 2012 WL 1438770, at *11 (E.D. Va. Apr. 25, 2012). *Complaint of Christiansen Marine, Inc.*, in turn, relies on *Daniel Construction Co.* v. *Welch Contracting Corp.*, 335 F. Supp. 303, 305 (E.D. Va. 1971), a federal court decision that has been cited by other federal courts in passing on a mere eight occasions in

the half-century since it was handed down. What is more, the United States Court of Appeals for the Fourth Circuit has cited *Daniel Construction Co.* for the proposition that, under Virginia law, "contracts should be interpreted to give effect to parties' intentions, and parties are deemed to intend what the contract plainly declares." *Carpenter Insulation & Coatings*, 1991 WL 120315, at *3. Finally, NFI relies on *National Motels, Inc.* v. *Howard Johnson, Inc.*, 373 F.2d 375, 379 (4th Cir. 1967), another federal court decision from nearly sixty years ago, which supports finding a valid indemnification agreement here. In *National Motels, Inc.*, the Fourth Circuit noted that it is "not against the public policy of Virginia for one to contract against his own negligence in some situations," but nevertheless concluded that the parties in that case had not agreed to such a term. *Id.* (citing *Lackey* v. *Brooks*, 204 Va. 428 (1963)); *see also Carpenter Insulation & Coatings*, 1991 WL 120315, at *4 ("[I]t is not against the public policy of Virginia for a party to contract against its own negligence.") (citing *Chesapeake & Potomac Tel. Co. of Va.* v. *Sisson & Ryan, Inc.*, 234 Va. 492, 504 (1987); *Appalachian Power Co.* v. *Sanders*, 232 Va. 189, 196 (1986)). As the Supreme Court of Virginia has made clear, "parties may contract as they choose so long as what they agree to is not forbidden by law or against public policy," and Virginia courts "take the general view that where parties contract upon a subject, they should be bound by their agreement." *Chesapeake & Potomac Tel. Co. of Va.* 234 Va. at 503, 504.

Here, NFI and Lidl agreed, in relevant part, that NFI must "promptly indemnify and hold Lidl harmless, and will defend Lidl against *any and all* loss, liability, damage, claims, demands, or suits." ECF Nos. 34-4 ¶ 12.2; 46-3 ¶ 12.2 (emphasis added). "The ordinary meaning of the word 'any' is inclusive, and no exception is created for losses that may result solely or in part from [a party's] negligence." *Carpenter Insulation & Coatings*, 1991 WL 120315, at *4 (applying Virginia law); *see also Solaria Corp.* v. *Siemens Gov't Techs., Inc.*, No. 1178-24-4, 2025 WL 2698254, at *9 (Va. Ct. App. Sept. 23, 2025) ("Virginia courts have enforced broad

indemnity provisions."). The only limitation on this indemnification language is that the claims or suits be "based on, arise out of or are related to, directly or indirectly, the continuing or terminated employment relationship of any employees who are appointed to perform services due under this Agreement or the rendering of services for Lidl by such personnel." ECF Nos. 34-4 ¶ 12.2; 46-3 ¶ 12.2. As set forth previously with respect to NFI's duty to defend, Mr. Edmonds' negligence claim arises from and relates to his employment relationship with NFI. Ultimately, the determination of whether NFI has a duty to indemnify Lidl depends, as relevant here, "on the resolution of the personal injury suit." *Dominion Nuclear Conn., Inc.*, 2018 WL 654719, at *1. Before determining whether or not the indemnification clause in the Contract applies to Lidl's allegedly negligent conduct, the Court must first determine whether Lidl was negligent at all. *Id.* at *2-3 (declining to rule on the third-party defendant's duty to indemnify the third-party plaintiff at summary judgment because the duty to indemnify "depends, in part, on [the third-party plaintiff's] payment of a judgment" which could not occur until the underlying claim was resolved). At this juncture in the case, it suffices that Lidl has plausibly alleged both the duty-to-defend and duty-to-indemnify components of its contractual claim.

**C. Maryland Workers Compensation Act (MWCA) Immunity**

NFI further contends that it is immune from suit because the Contract's indemnification provision does not include an express waiver of NFI's worker's compensation immunity. ECF No. 46-1 at 6–8. Notwithstanding the Contract's choice-of-law provision, Maryland law applies to Mr. Edmonds' tort claim and Count II of the Third-Party Complaint under the doctrine of *lex loci delecti*. *Philip Morris Inc.* v. *Angeletti*, 358 Md. 689, 744 (2000); *see also* ECF Nos. 46-1 at 6 n.7 (NFI arguing that tort claims are governed by Maryland law); 53 at 2–4 (discussing Maryland law in opposition to NFI's arguments for dismissal of Count II). Under *lex loci delecti*, "the substantive tort law of the state where the wrong occurs governs." *Hauch* v.

*Connor*, 295 Md. 120, 123 (1983). The conduct alleged in the Complaint and Third-Party Complaint occurred in Maryland. ECF Nos. 2 ¶ 3; 41 ¶ 1. Maryland law therefore governs Mr. Edmonds' negligence claim and Lidl's indemnification/contribution claim.

The purpose of the Maryland Workers Compensation Act (MWCA) "is to protect workers and their families from hardships inflicted by accidental work-related injuries and occupational diseases." *Matter of Collins*, 468 Md. 672, 686 (2020) (citation omitted); *see also* Md. Code Ann., Lab. & Empl. § 9-101, *et seq*. The MWCA requires an employer or an insurer to pay benefits to covered employees "who suffer an accidental personal injury, or who develop an occupational disease, in the course of their employment," *id.*, "regardless of whether the employer is at fault for the injury," *Ledford* v. *Jenway Contracting, Inc.*, 259 Md. App. 534, 544 (2023) (internal quotation omitted), *aff'd*, 490 Md. 666 (2025). "Compensation awarded on this fault-free basis under the statutory plan substitutes for an employee's common law right to bring a fault-based tort suit against an employer for damages resulting from the employee's injury or disablement on the job." *DeBusk* v. *Johns Hopkins Hosp.*, 342 Md. 432, 438 (1996). An employer is "considered to be 'immune' from suit at law" because an employee's sole remedy against an employer for negligence is to file a claim under the MWCA. *Lumpkins* v. *United States,* 212 F. Supp. 2d 464, 468 (D. Md. 2002) (internal quotation marks and citation omitted); *see also* Md. Code Ann., Lab. & Empl. § 9-509(a) ("Except as otherwise provided in this title, the liability of an employer under this title is exclusive."). While this immunity generally "prevents suits against an employer by an employee and third parties who may be held liable to the employee . . . if an employer has entered into an express indemnification agreement with a third party, then the third party may pursue a claim against the employer." *Kruis* v. *Allmine Paving, LLC*, No. 3:13-CV-25, 2013 WL 5557484, at *5 (N.D. W. Va. Oct. 8, 2013) (the plaintiff's filing of a MWCA claim did not render the third-party defendant immune from suit

under Maryland law due to the indemnification agreement between the defendant and third-party defendant); *see also Lumpkins,* 212 F. Supp. 2d at 469 ("A statutory employer may not be sued by a third party for indemnity absent an express indemnification agreement.").

NFI contends that Maryland courts "have not specifically addressed the issue of the sufficiency of an indemnity provision to effect a waiver of an employer's liability." ECF No. 46-1 at 7. Lidl counters that Maryland courts have "specifically recognized that [indemnification] agreements are *not* inconsistent with the exclusivity of the [MWCA]" because they "represent a separate contractual obligation rather than a liability arising directly from the employee's injury." ECF No. 53 at 3 (emphasis in original). The undersigned concurs. As discussed previously, *see* II.B., *supra*, the operative language of the Contract plainly states that NFI has a contractual obligation to indemnify Lidl from "any and all" claims arising from an employment relationship. ECF Nos. 34-4 ¶ 12.2; 46-3 ¶ 12.2. Maryland law provides that an employer covered by the MWCA "may enter into an indemnification contract with a third[-]party tortfeasor" and "such a contractual obligation does not offend the principles of the exclusivity rule" of the MWCA. *Board of Educ. of Prince George's Cnty.* v. *Marks-Sloan*, 428 Md. 1, 46 (2012). The undersigned finds the out-of-state authority upon which NFI relies wholly inapposite. ECF No. 46-1 at 7–8. As a federal court sitting in diversity jurisdiction, the undersigned must apply Maryland law, not the law of Ohio or Pennsylvania, as NFI suggests. *Id.*; *Mathis*, 69 F.4th at 242; *Lewis*, 422 Md. at 657. NFI's argument that the MWCA's exclusivity provision renders it immune from Lidl's contractual claim therefore fails.

**D. Indemnity and Contribution**

Finally, NFI argues that Lidl's claim for indemnification and contribution alleged in Count II of the Third-Party Complaint must be dismissed because Mr. Edmonds cannot recover

directly from NFI.[5] ECF No. 46-1 at 8–10. Lidl has not offered any argument in opposition to this point. ECF No. 53. NFI correctly notes that a claim for contribution under the Uniform Contribution Among Tortfeasors Act (UCATA), Md. Code Ann., Cts. & Jud. Proc. § 3-1401, *et seq*., is derivative in nature.[6] *Parler & Wobber* v. *Miles & Stockbridge*, 359 Md. 671, 687 (2000); *Ennis* v. *Donovan*, 222 Md. 536, 539 (1960), *abrogated in part on other grounds by Bozman* v. *Bozman*, 376 Md. 461 (2003). Maryland's highest court has held that "there can be no contribution where the injured person has no right of action against the third-party defendant." *Ennis*, 222 Md. at 539 (quoting *Baltimore Transit Co.* v. *State, to Use of Schriefer*, 183 Md. 674, 679 (1944)); *see also Montgomery Cnty.* v. *Valk Mfg. Co.*, 317 Md. 185, 193

---

[5] It is unnecessary to address NFI's alternative argument for dismissal of Count II based on "active" and "passive" negligence. ECF No. 46-1 at 10; *Richards* v. *Freeman*, 179 F. Supp. 2d 556, 560 (D. Md. 2002) ("In Maryland, the 'active/passive' negligence rule applies, by which a defendant whose negligence was 'passive' may seek indemnity from a defendant whose negligence was 'active.'") (citing *Franklin v. Morrison,* 350 Md. 144, 159-163 (1998)). The Third-Party Complaint's threadbare, speculative allegation does not plausibly allege that NFI was negligent. ECF No. 41 ¶ 10 ("Upon investigation, and upon information and belief, and notwithstanding the Plaintiff's contributory negligence, *the only possible cause of the Plaintiff's injuries could be the acts and omissions of Third[-]Party Defendants*.") (emphasis added). What is more, Mr. Edmonds' Complaint alleges active negligence on the part of Lidl, thus rendering implied indemnification unavailable. ECF No. 2 ¶¶ 4–7; *Holman* v. *Greyhound Lines, Inc.*, Civil Action No. NAH-21-112, 2022 WL 1720152, at *9 (D. Md. May 27, 2022); *Richards*, 179 F. Supp. 2d at 560.

[6] The Third-Party Complaint does not identify the legal basis for Count II. ECF No. 41 ¶¶ 8–11. NFI refers to Count II as asserting a claim for "common law indemnity and contribution." ECF No. 46-1 at 8. Maryland's highest court has made it clear that there is no common law right to contribution, which, in Maryland, is statutory in nature. *Montgomery Cnty.* v. *Valk Mfg. Co.*, 317 Md. 185, 193 (1989); *Ennis* v. *Donovan*, 222 Md. 536, 539 (1960), *abrogated in part on other grounds by Bozman* v. *Bozman*, 376 Md. 461 (2003). "At common law, Maryland generally recognized indemnification only in cases where a wrongful act of a party imposed liability on a third party; in such instances the latter could seek indemnification from the party actually guilty of the wrongful act." *Parler & Wobber* v. *Miles & Stockbridge*, 359 Md. 671, 683 (2000). The *Parler & Wobber* Court, however, questioned whether there is a meaningful distinction between contribution and indemnification among joint tortfeasors. *Id.* at 683 n.6 (quoting 1 Stuart M. Speiser, *et al*., THE AMERICAN LAW OF TORTS § 3:15, at 423–24 (1983, 2000 Supp.)).

(1989) ("[C]ontribution from a third[-]party defendant is predicated on his or her direct liability to the plaintiff"). Unlike the contractual duty to defend and indemnify alleged in Count I, as to Count II, "any entitlement to contribution which a concurrent wrongdoer may have from another culpable party arises from the duty each of the wrongdoers owes to the injured party, as opposed to an obligation running among themselves." *Fischbach & Moore Int'l Corp.* v. *Crane Barge R 14*, 476 F. Supp. 282, 287 (D. Md. 1979), *aff'd*, 632 F.2d 1123 (4th Cir. 1980) (cited with approval in *Montgomery Cnty.*, 317 Md. at 194). In other words, "between a defendant and an impleaded party, there must be common liability in tort to an injured person . . . . Common liability exists when two or more actors are liable to an injured party for the same damages, even though their liability may rest on different grounds." *Parler & Wobber*, 359 Md. at 686-687. As discussed previously, *see* II.C., *supra*, the MWCA renders NFI immune as to Mr. Edmonds' negligence claim stemming from his workplace injury. "[W]hen immunity is recognized, no right to contribution or indemnification exists because the third party has no common liability to the plaintiff." *Parler & Wobber*, 359 Md. at 702. Because NFI is not directly liable to Mr. Edmonds and thus is not a joint tortfeasor with Lidl, there is no basis upon which Lidl can seek contribution or indemnification from NFI under the UCATA. *Montgomery Cnty.*, 317 Md. at 192-193; *Baltimore Transit Co.*, 183 Md. at 681. Count II will therefore be dismissed. NFI's asserted obligation to defend, and possibly indemnify, Lidl arises from the contractual agreement between those parties, as alleged in Count I.

## III. CONCLUSION

For the foregoing reasons, NFI's motion to dismiss the Third-Party Complaint (ECF No. 46) is granted in part and denied in part. A separate Order follows.

Date: September 10, 2026

/s/
Erin Aslan
United States Magistrate Judge